```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KATHLEEN T. MURPHY            : CIVIL ACTION
                              :
          Plaintiff           :
                              :
     vs.                      :
                              : NO.  07-CV-4104
CITY OF PHILADELPHIA          :
DEPARTMENT OF RECREATION      :
                              :
          Defendant           :
```

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                **August 24, 2011**

This employment discrimination case is once again before the Court for resolution of the Motion of Plaintiff Kathleen Murphy to Mold the Judgment Pursuant to Title VII's Fee Shifting Provision and Enter Judgment Against Defendant in the Amount of $293,134 (Doc. No. 54).  For the reasons set forth below, the motion shall be partially granted.

**History of the Case**

As noted, this is an employment discrimination action that was initiated in October, 2007 pursuant to Title VII of the Civil Rights Act of 1964, as amended, following Plaintiff's exhaustion of administrative remedies with the Equal Employment Opportunity Commission ("EEOC").  The case was tried to a jury in November, 2010 and resulted in a verdict in Plaintiff's favor solely on her

retaliation claim and an award of $100,000 in compensatory damages.  By the motion which is now before us, Plaintiff moves to mold the verdict to include attorneys' fees and costs in the amount of $193,134.  Defendant contends that, inasmuch as Plaintiff was only successful on one out of three claims, she should only be awarded the sum of $69,755.60.

## Discussion

Although our legal system generally adheres to the so-called "American Rule" under which each party typically bears its own litigation expenses regardless of whether it wins or loses, Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another.  Fox v. Vice, ___ U.S. ___, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45, 53 (2011)(citing Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed.2d 449 (1992) and Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed.2d 141 (1975)).  Such a fee shifting provision exists in Title VII and is set forth in Section 706(k), codified at 42 U.S.C. §2000e-5(k).  That section reads as follows:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Thus under Title VII, as under most other fee shifting

statutes, a plaintiff must be a "prevailing party" to recover an attorney's fee.  See, Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed.2d 40 (1983).  "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Id., *cited with approval in* Texas State Teachers Ass'n. v. Garland Independent School District, 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed.2d 866 (1989).  See also, Sole v. Wyner, 551 U.S. 74, 76, 127 S. Ct.  2188, 2194, 167 L. Ed.2d 1069 (2007). It then remains for the district court to determine what fee is "reasonable."  Id.

   Since the Supreme Court decided Hensley, Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed.2d 891 (1984) and Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed.2d 439 (1986), "the 'lodestar' figure has, as its name suggests, become the guiding light of ... fee-shifting jurisprudence."  Gisbrecht v. Barnhart, 535 U.S. 789, 801, 122 S. Ct. 1817, 1825, 152 L. Ed.2d 996, (2002)(quoting Burlington v. Dague, supra.)  Under this method, "the most useful starting point for court determination of the amount of a reasonable fee payable by the loser is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id. (quoting Hensley, 461 U.S. at 433,

103 S. Ct. at 1939).

Although the lodestar[1] is presumed to be the reasonable fee, the district court has the discretion to make certain adjustments to it.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  In a statutory fee case, the party opposing the fee award has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee.  Id., citing Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989).  Hence, the court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party.  Interfaith Community Organization v. Honeywell, 426 F.3d 694, 711 (3d Cir. 2005)(citing Bell, at 719); Wade v. Colaner, Civ. A. No. 06-3715, 2010 U.S. Dist. LEXIS 138518 at *12 (D. N.J. Dec. 28, 2010).  However, once the opposing party has made a specific objection, the party seeking an award of fees bears the burden of showing that the claimed rates and number of

---

[1]  Although less than perfect, the lodestar method has several important virtues, the first of which is that "it looks to the prevailing market rates in the relevant community."  Perdue v. Kenny A., ___ U.S. ___, 130 S. Ct. 1662, 1672, 174 L. Ed. 2d 494, 504 (2010)(quoting Blum, 465 U.S. at 895).  It further "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  Id. (emphasis in original).  Finally, the lodestar method is "readily administrable" and "objective" and "thus cabins the discretion of trial judges, permits meaningful review, and produces reasonably predictable results."  Id. (citing, *inter alia*, Dague, 505 U.S. at 566, Hensley, supra., at 533 and Buckhannon Board & Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources, 532 U.S. 598, 609, 121 S. Ct. 1835, 149 L. Ed.2d 855 (2001).

hours are reasonable.  Id.; Loughner v. University of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001); Rode, supra.

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."  McGuffey v. Brinks, Inc., 598 F. Supp. 2d 659, 669 (E.D. Pa. 2009)(quoting Rode,892 F.2d at 1183).  In conducting its analysis, the district court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id, (quoting id).

What's more, because the District Court must articulate the basis for a fee award and the record must at least reflect that the trial court "fully comprehended the factual and legal issues and adequately performed the decision-reaching process," [a] "District Court is obligated to 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary.'" Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 362 (3d Cir. 2001)(quoting Maldonado v. Houston, 256 F.3d 181, 184 (3d Cir. 2001) and Pub. Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).  Thus, "it is necessary that the

5

Court go line by line by line through the billing records supporting the fee request."  Id.; Bucceroni v. City of Philadelphia, Civ. A. No. 03-6371, 2006 U.S. Dist. LEXIS 85559 at *9 (E.D. Pa. Nov. 27, 2006).

Finally, Courts may not make any findings of reasonableness based on a generalized sense of appropriateness, but "must rely on the record."  Evans, 273 F.3d at 361 (quoting Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 (3d Cir. 1997)).  In requesting, challenging and granting attorneys' fees, specificity is critical; a request for fees must be accompanied by "fairly definite information as to hours devoted to various general activities, *e.g.*, partial discovery, settlement negotiations, and the hours spent by various classes of attorneys."  U.A.W. Local 259 Social Security Department v. Metro Auto Center, 501 F.3d 283, 291 (3d Cir. 2007)(quoting Evans, at 361).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  Id., (quoting Hensley, 461 U.S. at 433).  "In addition, an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'"  McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009)(quoting Hensley, 461 U.S. at 434-435, 103 S. Ct. at 1940)).  Consequently, "[w]here a plaintiff has achieved only

partial or limited success, a district court may adjust the fee downward." Spence v. Wal-Mart Stores, Inc., 469 F.3d 311, 318 (3d Cir. 2006).

In this case, Plaintiff's counsel seeks a total of $183,905 for 623.30 hours of attorney and paralegal time, plus costs in the amount of $9,229. The hourly rates charged by Plaintiff's lawyers range from $175 to $425 and for the firm's paralegals and/or law clerks the rates charged were between $70 and $150 per hour. The reasonableness of these charges is attested to by the affidavit of John M. Elliot, Esquire, Chairman and Senior Shareholder of Elliot, Greenleaf & Seidzikowski, P.C. of Blue Bell, Montgomery County, Pennsylvania and who is himself an experienced litigator. Although Defendant takes no issue with the hourly billing rates charged for the services of Walter H. Flamm, Jr., Esquire, Robert J. Krandel, Esquire or Lisa M. Callow, it does challenge the rates quoted for the services of Christie M. Flamm, Esquire and Irene Montero by submitting the Affidavit of its own counsel, Alan B. Epstein, Esquire. Specifically, Mr. Epstein, who has several decades of experience in the practice of employment litigation in the federal and Pennsylvania state courts and who has long maintained his practice in the City of Philadelphia, opines that the hourly rates charged for the services of Ms. Flamm, and Ms. Montero are "far beyond the parameters of hourly fees charged ... in the

Philadelphia legal community ...," and "[a]ccordingly, the hourly rate[s] [are] way beyond the reasonable rate charged ... in the Montgomery County legal community," particularly "in light of the contingent nature of the fee charged and the results obtained." (Verification of Alan B. Epstein, Esquire in Support of Defendant's Response in Opposition to Plaintiff's Motion for Attorney's Fees and Costs, attached as Exhibit "C" to Defendant's Amended Response and Memorandum in Opposition, at ¶s 10 - 13). We agree with Mr. Epstein's assertions, particularly in view of the fact that Ms. Flamm, who began practicing law in 2006, had at most 2 years' experience at the time she performed the work for which Plaintiff now seeks compensation.  We also find that Mr. Epstein's suggested rates of $165 per hour for Ms. Flamm's work and $90 per hour for the services of Ms. Montero, who was a second year law student at the relevant time she performed the services at issue, are fair and appropriate.[2]

We now examine the reasonableness of the time spent and charged by the law firm which represented the plaintiff.  In this regard, Defendant objects to a number of the billing entries as excessive and on the grounds that the entries related to a number of claims on which the plaintiff was unsuccessful.

    *A.  Billing Relative to Claims Which Proved Unsuccessful.*

---

[2] In contrast, Plaintiff's counsel's bills charge $210 per hour for Ms. Flamm's services and $150 per hour for Ms. Montero's.

Initially, Defendant asserts that it should not be charged for any of the entries involving the engagement, consultation or any other of Plaintiff's counsel's activities involving expert witness Andrew Verzilli because Dr. Verzilli was retained to testify on the matters of back pay and front pay damages – damages which Plaintiff was not awarded.  Plaintiff does not dispute this assertion and under the authority of Hensley and Spence, both supra, we also cannot disagree.  As a result, we decline to order Defendant to pay the $3,600 expert witness fees charged by Dr. Verzilli or the sum of $4,185 attributable to 16 hours of attorney time.

  *B.  Duplicative Time Entries*

Defendant next takes exception to Plaintiff's counsel's charges for duplicative work and conferences between counsel. While we recognize that some review, oversight and discussion among attorneys in a firm is both necessary and one of the benefits to practicing law with others, we do agree with Defendant that the extent to which it is being charged for such activities in this case is indeed somewhat excessive. Accordingly, we shall disallow a total of 19.7 hours of Robert J. Krandel's time, 22.9 hours of Walter H. Flamm's time and 4 hours of Christie Flamm's time over the life of the case as being both duplicative and unnecessary.

*C. Excessive Time Charged*

Finally, Defendant challenges a vast number of Mr. Krandel's billing entries as being excessive, primarily on the grounds that, as an experienced employment law attorney and litigator, Mr. Krandel did not need to spend the amount of time for which he charged on several research and drafting tasks. Again, we are constrained to agree with Defendant's assertion, particularly with regard to Mr. Krandel's charging for 18 hours of time to prepare what was a fairly simple and straightforward complaint, for 2 hours of time for purportedly researching how to obtain a party's medical records under the Federal Rules of Civil Procedure and 2.1 hours to meet with a potential vocational expert who was not retained. Accordingly, we shall strike a total of 14.3 hours from Mr. Krandel's time on the grounds that it was in excess of what would typically have been required by an attorney with his experience to accomplish the stated objectives.

## Conclusion

Accordingly, following the deductions and disallowances discussed above, we find that Plaintiff's counsel are entitled to compensation for $160,449.50 in attorneys' fees for 542.5 hours of attorney, law clerk and paralegal time, together with $5,629.27 in costs and expenses. We shall therefore grant Plaintiff's motion to add $166,078.77 to her existing judgment.

An order follows.